UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD RAY ATWELL | CIVIL ACTION |
| VERSUS | NO. 13-64-JWD-RLB |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on February 3, 2015.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| DONALD RAY ATWELL | CIVIL ACTION |
|---|---|
| VERSUS | NO. 13-64-JWD-RLB |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Donald Ray Atwell (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 131-34).[1]  For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion for Summary Judgment (R. Doc. 12) by **DENIED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.   PROCEDURAL HISTORY

On July 16, 2010, Plaintiff filed an application for benefits alleging a disability onset date of April 1, 2008. (Tr. 131).  The claim was initially denied (Tr. 64) and Plaintiff filed a timely request for a hearing that was held on November 16, 2011 at which Plaintiff, represented by counsel, appeared and testified. (Tr. 20-63).  Plaintiff's mother, Ms. Stella Atwell, also testified. (Tr. 54-62).

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]).  References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on December 8, 2011. (Tr. 8-16). The ALJ found that Plaintiff had not been under a disability from the alleged onset date of April 1, 2008 through December 8, 2011, the date of the decision. Plaintiff's request for review was denied by the Appeals Council on November 30, 2012. (Tr. 1-4). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic

work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1. Plaintiff met the insured status requirements of the Act through December 31, 2013.

2. Despite evidence of earnings in 2008 (Tr. 135, 141), the ALJ gave Plaintiff "the benefit of the doubt" in finding he had not engaged in substantial gainful activity since April 1, 2008, the alleged onset date.

3. Plaintiff's degenerative disc disease of the neck and back qualified as a severe impairment. However, Plaintiff's depression, temporomandibular joint dysfunction (TMJ), and arthritis were not considered severe.

4. Plaintiff did not have an impairment(s) that met or medically equaled a Listing, specifically Listing 1.04 for spinal disorders.

5. Plaintiff retained the residual functional capacity to perform the full range of light work.[2]

---

[2] According to the Commissioner's Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

6. Plaintiff could no longer perform his past relevant work as a painter as it exceeded the physical demands of light work.

7. Because he was born on April 23, 1965, Plaintiff qualified as a younger individual under the Social Security Act. *See* 20 C.F.R. § 404.1563(c) (a younger person is someone under the age of 50).

8. Plaintiff had the ability to communicate in English and because he completed the 10th grade, his education was "limited."

9. The transferability of Plaintiff's job skills was not material to the ultimate determination of disability when applying the Medical Vocational Guidelines (GRIDS).

10. Given Plaintiff's age, education, work experience and RFC, Rule 202.18 of the GRIDS directed a finding of not disabled as jobs existed in the national economy that Plaintiff could perform.

11. Plaintiff was not disabled between April 1, 2008 and December 8, 2011.

(Tr. 10-16).

### IV. DISCUSSION

On appeal, Plaintiff raises two assignments of error. First, Plaintiff argues the Appeals Council violated its own regulations while considering Plaintiff's appeal of his previously denied application for disability insurance benefits. In that same assignment of error, Plaintiff claims that, in the instant application, the ALJ and Appeals Council erred in refusing to address his request to reopen his earlier application. As his second assignment of error, Plaintiff claims the ALJ "committed legal error in failing to ascribe controlling weight to the treating physician's well-documented and well-supported opinion." (R. Doc. 12-2 at 1). Plaintiff further alleges that

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

because the ALJ discredited Dr. Marta Fechete's opinion, he likewise disregarded Plaintiff's anxiety and depression, which were diagnosed by Dr. Fechete. (R. Doc. 12-2 at 15).

A. **Administrative Errors During Plaintiff's 2008 Application**

Before filing the instant application, Plaintiff filed an earlier application for disability insurance benefits on July 1, 2008. (R. Doc. 12-3 at 4). Like the instant application, Plaintiff's 2008 application also alleged a disability onset of April 1, 2008. (R. Doc. 12-3 at 4). The Administrative Transcript associated with the 2008 application is not in the record, as it is not the application at issue before this Court. The few documents relevant to the 2008 application are those filed in the record by Plaintiff. Based on documents attached to Plaintiff's Motion for Summary Judgment, the 2008 application was denied by an ALJ on November 2, 2009. (R. Doc. 12-3). According to Plaintiff, he sought review of the denial before the Appeals Council. While his application was pending before the Appeals Council, Plaintiff represents that he retained counsel, who then requested copies of the administrative transcript and additional time to submit a brief in support of the appeal. (R. Doc. 12-2 at 6). On July 22, 2010, the Appeals Council denied Plaintiff's request for review. (R. Doc. 12-5). Plaintiff contends the Appeals Council acted without ever responding to his attorney's request for the administrative transcript in violation of its own policies and procedures.

Whether the Appeals Council committed any error in reviewing Plaintiff's 2008 application is something this Court cannot properly, or even practically, consider. First, Plaintiff was statutorily required to seek judicial review of the Appeals Council's conduct and the Commissioner's denial within 60 days of notice of the Appeals Council's decision. 42 U.S.C. § 405(g). Plaintiff failed to seek judicial review within the time period and he has not otherwise alleged that the equitable tolling should apply to allow for review of this claim. *Myer v. Chater*,

99 F.3d 1134, at *2 (5th Cir. 1996) ("Section 405(g) [is] a limitations provision to which equitable tolling [is] applicable."). Beyond that, the Court cannot practically determine whether any error actually occurred, because it is not in possession of the Administrative Transcript associated with the 2008 application. Therefore, any assignment of error associated with the Social Security Administration's handling and denial of Plaintiff's 2008 application is not properly before this Court.

      B.      **Plaintiff's Request to Reopen His 2008 Application**

Plaintiff next argues that the ALJ in the instant application "compounded the violations" mentioned above by "refusing to address the Plaintiff's request to reopen the [2008] application." (R. Doc. 12-2 at 4). Generally, if a claimant is "dissatisfied with a determination or decision made in the administrative review process, but do[es] not request further review within the stated time period, [he or she] lose[s] [the] right to further review and that determination or decision becomes final." 20 C.F.R. § 404.987(a). However, an otherwise final decision may be reopened within 4 years upon a showing of good cause. 20 C.F.R. § 404.988(b).[3]

Generally, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977). The only exception is if the claimant challenges the denial of a request to reopen on constitutional grounds. *Id.*

To the extent Plaintiff is arguing the ALJ's failure to explicitly state whether he reopened the earlier period violated her constitutional rights, he must demonstrate resulting prejudice to warrant relief. *See Curtis v. Comm'r of Soc. Sec.*, 2008 WL 919692, at *2 (W.D. La. Feb. 27,

---

[3] There is good cause to reopen a final decision if: "(1) New and material evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was made; or (3) The evidence that was considered . . . clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a).

2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981) (must show substantial prejudice to establish denial of constitutional right in administrative proceeding)). Plaintiff has not claimed any prejudice in connection with the current application resulting from the ALJ's failure to explicitly address his request to reopen. Beyond that, any error by the ALJ was harmless where the current application alleged the same onset date as Plaintiff's 2008 application (April 1, 2008) and the ALJ considered evidence relevant to the period covered by the 2008 application. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (Where previously denied application alleged an onset of April 1984 and second application alleged an onset of January 16, 1984, court found ALJ "fully considered the period covered by the first application" and "reject[ed] the contention that the ALJ erred by failing to reopen it."). In other words, a de facto reopening of Plaintiff's 2008 application occurred. *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995) (noting that a de facto reopening of a Commissioner's earlier decision can occur "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period"); *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002) ("We will find a [de facto] reopening . . . where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits."). And so, Plaintiff cannot show any resulting prejudice that would warrant relief.[4]

---

[4] Plaintiff additionally complains that the Appeals Council failed to respond to his "Dire Need Request" to expedite consideration of his appeal due to a pending foreclosure. (R. Doc. 12-2 at 9). This is not an assignment of error raised on appeal. Plaintiff neither develops this argument nor offers any legal authority in support. But most importantly, he fails to allege any resulting harm or prejudice. Because Plaintiff has not adequately raised this issue, the Court does not consider it.

C.  **Treating Source Rule**

Plaintiff suggests the ALJ erroneously rejected his treating physician Dr. Marta Fechete's opinion without discussing the *Newton* factors and without good cause.[5] Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[6] The ALJ did not provide such a "detailed analysis."

The ALJ, however, is not required to consider each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Thus, the ALJ's decision to reject a treating specialist's opinion must be supported by substantial, contradictory, first-hand evidence from another physician. If the decision is so supported, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534).

---

[5] Plaintiff additionally argues that the ALJ assigned to his 2008 application also erroneously disregarded the opinion of his treating physician. (R. Doc. 12-2 at 11). Again, the 2008 application is not before this Court and any alleged errors associated with that application will not be considered.

[6] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

An ALJ is free to discredit the opinion of a treating physician when it is contradicted by another physician. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion).

The Court has reviewed the decision and finds no support for Plaintiff's contentions. As an initial matter, *Newton* and its required "detailed analysis" do not apply to Plaintiff's case because the record contains competing first-hand medical evidence from other treating and examining sources, such as Dr. Solomon and Dr. Durbin. And so, Plaintiff incorrectly suggests the ALJ was required to analyze Dr. Fechete's August 20, 2010 Physical Medical Source Statement using the 6 factors described in *Newton* and 20 C.F.R. § 404.1527(c)(2)-(6). *See Walker*, 158 F. App'x at 535. Second, the ALJ not only stated that he discredited the opinion, he went beyond what was legally required by specifying his reasons for discrediting Dr. Fechete's opinion. Specifically, the ALJ discredited: (1) the extreme degree of limitations assessed by Dr. Fechete because they were inconsistent with the medical and testimonial evidence of record; and (2) Dr. Fechete, a general practitioner, did not treat Plaintiff for all of the ailments upon which she based her opinion. (Tr. 15). The ALJ gave a detailed overview of all the medical records from Plaintiff's treating and examining physicians. (Tr. 14-15). Considering the ALJ did assign weight to the opinion and specifically indicated why it was discredited, there is no merit to Plaintiff's argument that the ALJ violated *Newton* or 20 C.F.R. § 404.1527(c)(2)-(6). As such, no legal error occurred.

Second, the ALJ's RFC decision and his reasons for discrediting Dr. Fechete's opinion in making that RFC decision are supported by substantial evidence because Dr. Fechete's and other physicians' records do not support the extreme limitations she placed on Plaintiff. In her August

20, 2010 Physical Medical Source Statement, Dr. Fechete reports Plaintiff cannot walk an entire city block, can only sit or stand for 10 minutes at a time and less than 2 hours total in an 8 hour workday. (Tr. 295). Plaintiff would also need to switch positions during the day, which would include walking every 10 minutes for 1-minute intervals. (Tr. 295). Dr. Fechete additionally restricted Plaintiff to lifting no more than 10 pounds on occasion and 20 pounds rarely; occasionally twisting; rarely stooping, crouching, squatting, and climbing; but never climbing ladders. (Tr. 296). Dr. Fechete went on to report that Plaintiff had "significant limitations with reaching, handling [and] fingering." (Tr. 296). Over the course of an 8-hour workday, Dr. Fechete limited Plaintiff to using his right hand and fingers to grasp objects or perform fine manipulation for 1% of the day (or 4.8 minutes), but Plaintiff could grasp objects with his left hand for 6-33% of the day. (Tr. 296). Plaintiff was capable of reaching forward with either arm for 6-33%, but was limited to reaching overhead with either arm for only 1% (or 4.8 minutes) of an 8-hour workday. (Tr. 296). Cognitively, Dr. Fechete advised Plaintiff was "likely to be off task" for 25% or more of each day and only "capable of low stress work." (Tr. 297). Plaintiff's symptoms and medications, according to Dr. Fechete, would produce "good days and bad days," requiring him to take hourly 10-minute breaks and to miss work for more than 4 days each month. (Tr. 295, 297). These extreme limitations, however, are belied by the record.

 First, Dr. Fechete's own treatment notes do not objectively justify her August 20, 2010 assessment. Dr. Fechete cites the following "clinical findings and objective signs" as support for Plaintiff's assessed limitations: "had ORIF [(open reduction internal fixation)] right wrist, left ankle and plate in jaw; past severe beating [in] '92." (Tr. 294). To begin, these are not "clinical findings" or "objective signs" — they are medical procedures and a traumatic incident.

In terms of objective clinical findings throughout treatment, Dr. Fechete's notes are wanting. They do not report regular testing of Plaintiff's gait, range of motion, muscle tone, or grip and extremity strength. (Tr. 211-12, 219, 222, 232, 234, 242, 243). In other words, the type of testing that might explain the assessed limitations, given Plaintiff's complaints of back, foot, hand, wrist, and knee pain, are not present in Dr. Fechete's records. *See Greenspan v. Shalala*, 38 F.3d 232, 238 (5th Cir. 1994) ("Based upon the minimal nature of testing done by these physicians, the ALJ's determination that their opinion on Greenspan's disability was conclusory" and not entitled to controlling weight was appropriate.). Likewise, neither Dr. Fechete, nor any other physician of record, advised Plaintiff to limit his physical activities before or after Dr. Fechete's August 20, 2010 assessment. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (RFC supported by substantial evidence where "no physician had advised" claimant "to limit her activities in any way" and claimant's evidence was limited to her own testimony); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled).

Rather, Dr. Fechete's treatment notes mostly document Plaintiff's own complaints of back, hip, neck, foot, hand, knee and tooth pain. *See Taylor v. Astrue*, 245 F. App'x 387, 391 (5th Cir. 2007) (ALJ properly rejected physician's opinion what opinion was largely based on claimant's own self-evaluation). Plaintiff's subjective complaints, however, are not objective medical evidence. *Harper*, 887 F.2d at 96 (The mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence."). Most importantly, these limitations are inconsistent with the objective

findings of examining physicians, including Dr. Fechete, and Plaintiff's own testimony before the ALJ.

For example, Dr. Fechete noted that a February 19, 2009 x-ray of Plaintiff's left knee was "normal," despite his complaints of knee pain. (Tr. 232). Dr. Fechete's examination of Plaintiff's right foot on October 8, 2008 detected no signs of abnormality, again, despite Plaintiff's complaints of pain. (Tr. 243). On several occasions, Plaintiff either reported "no pain" or that his pain level was a zero on a scale of zero to ten. (Tr. 193, 195, 210, 219, 248). Treatment records from December 4, 2008 indicate Plaintiff was in no acute distress, could move all extremities and walked with a steady gait. (Tr. 240). On December 30, 2010, Plaintiff's gait and posture were similarly unremarkable. (Tr. 311). On December 17, 2010, Dr. Lawrence Koenig noted no evidence of edema and advised Plaintiff to engage in "activities as tolerated." (Tr. 355-56). At a December 2011 consultation to remove the hardware in Plaintiff's left foot, Plaintiff demonstrated good range of motion, stable joints, 5/5 motor strength and no signs of effusion. (Tr. 382).

As the ALJ pointed out, there is evidence to support that Plaintiff suffers from some limitation, although not to the degree alleged by Dr. Fechete. Specifically, a February 15, 2011 x-ray of Plaintiff's left ankle showed increased bony erosion and widening of the joint space when compared with a December 6, 2005 x-ray, but otherwise there was no evidence of fracture. (Tr. 363). An MRI of Plaintiff's lumbar spine from December 28, 2010 demonstrated neuroforaminal narrowing of the spinal cord and multi-level disc bulge; even still, there was no evidence of "compression of the cauda equina." (Tr. 365-66).

Otherwise, x-rays of Plaintiff's right wrist, left foot, right foot, and left knee, which were conducted in response to his complaints of pain, were unremarkable. A September 26, 2011 x-

ray of Plaintiff's right wrist showed bones, joint spaces and soft tissues that were "unremarkable" and otherwise found no evidence of fracture or dislocation. (Tr. 360). A July 12, 2011 x-ray of his left foot similarly found no evidence of loosening of the plate and screws in Plaintiff's left foot, alignment of the plate and screws was satisfactory, and the bones, joint space and tissues were unremarkable. (Tr. 362). An x-ray of Plaintiff's right foot found no signs of abnormality on February 15, 2011. (Tr. 364). Likewise, a February 19, 2009 x-ray of Plaintiff's left knee was "normal," despite his complaints of knee pain. (Tr. 203, 232).

Dr. Michael Solomon, a consultative examiner, performed a physical examination of Plaintiff on September 2, 2010. (Tr. 299-302). Plaintiff reported to Dr. Solomon that he suffered from constant neck and lower back pain. (Tr. 300). Plaintiff explained that he could not walk more than 1-2 blocks; could not sit for more than 20 minutes; and had to frequently change between sitting and standing, although he could not "tell [Dr. Solomon] how long he keeps standing and moving around before he has to sit down." (Tr. 300). He complained of occasional swelling, but denied any numbness, tingling or weakness. (Tr. 300-01). Dr. Solomon observed that Plaintiff was in no apparent distress but appeared sad and depressed. (Tr. 301). He walked into and out of the room with a normal gait and without any assistive device, and was able to "get up on the exam table without assistance." (Tr. 301).

Upon physical examination, Plaintiff exhibited full grip and upper extremity strength (5/5) on both the right and the left; and his deep tendon reflexes were 2+ bilaterally. (Tr. 299). Both of his hands could be fully extended and form a fist. (Tr. 299). Plaintiff was also able to fully oppose all of his fingers. (Tr. 299). Dr. Solomon found no tenderness or swelling during his examination of Plaintiff's lower extremities, including the joints. (Tr. 299). Plaintiff likewise had full strength in his lower extremities and his deep tendon reflexes were 2+ bilaterally. (Tr.

299). The lower extremities showed no signs of claudication[7] or edema.[8] (Tr. 299). Dr. Solomon also found no evidence of muscle spasm or tenderness in Plaintiff's lower extremities. Neurologically, Plaintiff's retained light touch sensation. And while he was unable to tiptoe, Dr. Solomon reports he was able to heel walk and squat. (Tr. 299). Additionally, Plaintiff exhibited full range of motion in all of his joints, including his cervical and lumbar spine, knees, hips, ankles, elbows, shoulders and wrists. (Tr. 302).

Based on Plaintiff's history and his own examination, Dr. Solomon did not exertionally limit Plaintiff's functional capacity. (Tr. 299). Consistent with the medical evidence mentioned above, Dr. Solomon found Plaintiff could sit, stand, push, kneel, crawl, crouch, reach, grasp, handle and finger. (Tr. 299).

Plaintiff underwent a psychological evaluation performed by Dr. Sarah Durbin on December 30, 2010. (Tr. 311-13). At the start of the evaluation, Dr. Durbin observed Plaintiff walking with a normal gait and posture without any assistive devices. (Tr. 311). Plaintiff reported to Dr. Durbin that he no longer drives because of a suspended license and that he spends his days watching TV. (Tr. 312). He especially likes to watch car races as he likes to "tinker with motors." (Tr. 312). Plaintiff informed Dr. Durbin that he could no longer work because of physical pain. (Tr. 312). Dr. Durbin observed that Plaintiff had a normal mood, affect and pace; maintained good attention and concentration; and was "completely oriented" and alert throughout the examination. (Tr. 312-13). Plaintiff retained the ability to handle money and perform calculations. His fund of information and verbal reasoning were average, and his insight

---

[7] Claudication "means 'limping' or 'walking with difficulty.'" Thomas Stedman, *Stedman's Medical Dictionary* (*Stedman's*), 180550 (27th ed. 2000).
[8] Edema is "an accumulation of an excessive amount of watery fluid in cells or intercellular tissues" that is commonly referred to as 'swelling.' *Stedman's* at 279130.

and judgment remained intact. (Tr. 313). In Dr. Durbin's opinion, Plaintiff was "not manifesting any psychotic symptoms." (Tr. 313).

Based on her examination, Dr. Durbin felt Plaintiff's "ability to understand, recall and carry out simple and detailed instructions [was] not impaired." (Tr. 313). Plaintiff consistently did not show "serious decline in cogitative functioning." (Tr. 313). Dr. Durbin felt Plaintiff "may have short term memory changes of a mild nature." (Tr. 313). Due to Plaintiff's complaints of pain, Dr. Durbin suggested his "ability to sustain effort and persistence over a 40-week [was] moderately impaired." (Tr. 313). Nonetheless, that would not prevent him from "sustain[ing] attention for two hour blocks of time." (Tr. 313).[9]

While the medical evidence listed above supports that Plaintiff suffers from limitations caused by his impairments, it does not support the extreme degree of limitations found by Dr. Fechete. In support of his argument that Dr. Fechete's opinion is entitled to controlling weight, Plaintiff does little more than cite Dr. Fechete's longitudinal treatment record. But this is not persuasive, as neither party disputes Dr. Fechete's status as a treating source, and Dr. Fechete's history of treatment cannot compensate for her lack of objective findings.

In additional to the medical evidence, Dr. Fechete's Physical Medical Source Statement is equally inconsistent with Plaintiff's own testimony. Dr. Fechete suggested Plaintiff could not walk an entire city block; could stand or sit for no more than 10 minutes at a time; and would need to walk every 10 minutes for 1-minute intervals. Plaintiff, however, testified that he could

---

[9] This opinion is consistent with both the ALJ's finding that Plaintiff's mental impairments were not severe and his application of the GRIDS, as the ability to concentrate for 2-hour blocks of time is consistent with the ability to perform the full range of unskilled light work. *See Grant v. Shalala*, 33 F.3d 1379, *5 (5th Cir. 1994) (GRIDS are based on an "analysis of unskilled jobs throughout the national economy at various functional levels"); Social Security Administration: Program Operations Manual System (POMS), Disability Insurance (DI) No. 25020.010 (B)(2)(a), *Mental Limitations* (2012) ("Mental Abilities Needed for Any Job: . . . The ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure.)"); POMS DI No. 25020.010(B)(3)(d) ("Mental Abilities Critical for Performing Unskilled Work: . . . [M]aintain attention for extended periods of 2-hour segments (concentration is not critical)").

walk up to ¼ of a mile and was able to ride in a car for 1 hour. (Tr. 39, 51). Additionally, Plaintiff explained that he cuts his grass with a riding lawnmower, which he rides for 45 minutes at a time. (Tr. 44). Dr. Fechete also restricted Plaintiff to sitting for less than 2 hours total in an 8-hour day. (Tr. 295). Inconsistently, Plaintiff told the ALJ that he accumulates between 12 and 14 hours a day watching television in his recliner. (Tr. 49). Dr. Fechete similarly limited Plaintiff to grasping objects and performing fine manipulation with his right to only 1% of an 8-hour day — a total of 4.8 minutes. (Tr. 296). This limitation, however, cannot be reconciled with Plaintiff's stated affinity for "tinkering" with car motors or his ability to drive his riding lawnmower for 45 minutes at a time. (Tr. 44, 312). *See Nix v. Barnhart*, 160 F. App'x 393, 396 (5th Cir. 2005) ("Because Nix's actual activities were greater than those provided in his treating physicians' opinions, the ALJ did not err in refusing to give the opinions controlling or significant weight.").

Ultimately, "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x. 357, 360 (5th Cir. 2006). The medical and testimonial evidence discussed above provides substantial support for the ALJ's decision to discredit Dr. Fechete and find Plaintiff capable of light work. As such, remand is outside the appropriate exercise of the Court's authority on review.

Aside from the evidence, Plaintiff argues that the ALJ impermissibly discredited Dr. Fechete's opinion because she did not directly treat him for all of the conditions upon which her opinion was based. Despite Plaintiff's objection, this was not an impermissible reason to discredit Dr. Fechete, a general practitioner who did not directly treat Plaintiff's ankle impairment, hepatitis C, or depression and whose opinion conflicted with those of specialists like Dr. Solomon and Dr. Durbin. *Moore v. Sullivan*, 919 F.2d 901, 904-05 (5th Cir. 1990) (ALJ

properly discredited treating physician's opinion that claimant who suffered from coronary artery disease was unable to work and relied on contrary findings by two specialists, where treating physician was only a general practitioner). Instead, the ALJ's finding was a legally sound and accurate assessment of the medical evidence.

While Dr. Fechete has been Plaintiff's general practitioner for several years, Dr. Fechete has frequently referred Plaintiff to specialists, and Plaintiff has been otherwise treated by specialist for particular conditions outside of Dr. Fechete's expertise. (Tr. 216, 219, 224, 242) (Dr. Fechete referred Plaintiff to psychologists to address complaints of depression and anxiety); (Tr. 234) (referral by Dr. Fechete to urologist); (Tr. 326, 352, 353, 360, 362, 363, 364, 382) (Plaintiff received treatment for issues associated with his feet, ankle, and wrists by other doctors, including physicians at Earl K. Long's Orthopedic Clinic, as opposed to Dr. Fechete).

As such, the ALJ's decision to discredit Dr. Fechete's August 20, 2010 Physical Medical Source Statement is supported by substantial evidence. The medical and testimonial evidence discussed above substantially supports the ALJ's RFC determination and ultimate finding of disability.

### D. Mental Impairments

In his second assignment of error, Plaintiff also claims the ALJ erroneously discredited his anxiety and depression simply because they were diagnosed but not treated by Dr. Fechete. (R. Doc. 12-2 at 15). To begin, the ALJ considered the medical and testimonial evidence relevant to Plaintiff's depression and anxiety before recognizing them as mildly limiting, but not severe. (Tr. 313) (Dr. Durbin found Plaintiff was somewhat limited by mental impairments, but not to a degree inconsistent with the ability to perform unskilled work as he could concentrate for 2 hours at a time); (Tr. 216) (Plaintiff's psychology referral closed after his first visit because his

symptoms of anxiety and depression appeared under control). This finding was based on the record and nothing in the ALJ's opinion supports Plaintiff's claim that it was founded on Dr. Fechete's treatment (or lack thereof). (Tr. 11).

Second, the emphasis Plaintiff places on his diagnoses of anxiety and depression are misplaced. "The mere presence of some impairment is not disabling per se. Plaintiff must show that [he] was so functionally impaired by [his diagnosed conditions] that [he] was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). In other words, it is the limitations caused by the impairments and not the diagnoses themselves that matter. Plaintiff harps on his diagnosed mental impairments without alleging their resulting limitations, if any, would be disabling — either alone or in combination with his other impairments. The ALJ found Plaintiff's ability to perform the full range of unskilled light work was not diminished by any non-exertional limitations.

The Court finds the ALJ's RFC assessment is supported by substantial evidence.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**, Plaintiff's Motion for Summary Judgment (R. Doc. 12) be **DENIED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 3, 2015.

                                          **RICHARD L. BOURGEOIS, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**